**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JON COREY WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-06250** |
| **ENNIS, INC. d/b/a USPARK.NET** | **CHIEF MAGISTRATE JUDGE** |
| | **KAREN WELLS ROBY** |

## ORDER AND REASONS

Before the Court on consent of the parties under the authority of 28 U.S.C. § 636(c) is a

**Motion for Summary Judgment (Rec. Doc. No. 27)** filed by the defendant, Ennis, Inc. d/b/a

USPark.net ("Ennis") seeking judgment as a matter of law to dismiss the plaintiff's claims of race

discrimination or sexually hostile work environment violation of Title VII of the Civil Rights Act

of 1964 as codified in 42 U.S.C. § 2000e *et seq.* ("Title VII"). The motion is not opposed.  The

motion was submitted on the briefs.

## I.      Factual and Procedural Background

Jon Corey Williams ("Williams"), formerly worked as a Primary Preventative

Maintenance Technician ("PM Technician") for USPark.Net's airport parking facility at the Louis

Armstrong New Orleans International Airport ("New Orleans Facility"). Rec. doc. 27-2.  As a

Primary Preventative Maintenance Technician, Williams was responsible for performing service

repairs and preventative maintenance on Ennis fleet of diesel shuttle buses. (Rec. doc. 27-2, Job

description, Exhibit B.) Williams was originally hired by David Horn ("Horn"), the Region

General Manager but reported directly to the General Manager, Ms. Gayle Bell ("Bell").   He also

received work from Horn and could report job-specific problems to him.

Williams, a full-time employee was expected to report to work by 7:30 a.m. and work 40

hours a week.   Rec. doc. 27-4, Depo. Jon c. Williams 6 of 45, 79:5-15.  Williams, however did

not report to work on time on occasion throughout his employment, but in November 2016 his tardiness increased and became regular. As a result, Horn would counsel Williams about his lack of regularity, but his behavior did not change. Further in December 2016, Horn met with Williams again to address the inconsistency of his work hours and on this occasion Assistant Manager Stephanie Badeaux joined the meeting and explained to Williams that Ennis found his behavior of coming and going to work whenever he wanted unacceptable and instructed him to correct his behavior.

In January 2017, Williams was written up for his tardiness and for leaving work during the day. As an attempt to address the tardiness problem, Horn allowed Williams to set his own work schedule and Williams chose a start time of 8:00 a.m. However, even though Williams selected the time, he continued to report to work late on five different occasions. On February 7, 2017, another meeting was convened with an eye towards addressing Williams' behavior. Attending this meeting was his immediate supervisor and the hiring supervisor. Having reached an impasse, Williams was terminated by Ennis.

## II.    The EEOC Charge

On May 9, 2017, Williams filed a charge of discrimination complaining that he had been sexually harassed, disciplined, retaliated against and denied wages through bonuses. Rec. doc. 27-8. He alleges that he told Ms. Bell that he was uncomfortable with the sexual comments she made but she continued with the comments Id. He alleged that he reported to David Horn that his immediate boss Ms. Bell was constantly making inappropriate comments regarding her previously promiscuous life and how she learned to deal with it. Id. He complains that he only received one bonus while working for the defendant and he did not get paid when he traveled to Oklahoma for

work, which lasted four days. Id. He alleges that despite not being made aware of company disciplinary policies, he was aware he was supposed to work 40 hours a week and he was written up in January 2017 for not keeping the schedule. Id. He acknowledged that he was discharged on February 7, 2017. Rec. doc. 27.

Finally, Williams complains that on November 7, 2016, his direct supervisor Ms. Bell made an unwanted sexual advance, which consisted of her making a statement that another employee had told Bell that she could buy crotch-less panties and Bell mentioned to him that she had done so. Rec. doc. 1, P.15 out of 16. Williams also alleges that Bell told him that another employee wanted to have a sexual relationship with him.

The alleged retaliation consisted of terminating him to appease Bell who was unhappy because he was making more money than her. Id. at. 180:5-9. He also contends that Ennis terminated him because it knew or anticipated that he was going to file suit against it. *See id.* at 195:18-25.

### III.    The Complaint

According to Williams beginning in 2014, his immediate supervisor Gayle Bell, the General Manager of the New Orleans facility began sharing information with him about her sexual escapades while he was at work. He generally alleges that she shared incidents about her engaging in oral sex with others including her father-in-law, former coworkers and taking her immediate manager to a strip club. Rec. doc. 1.

Williams began to identify thirteen different instances of alleged sexual encounters Bell verbally shared with him despite his expression of lack of interest. Id. According to Williams, he found her statements to be sexually harassing. He makes no allegation that the comments were

made and directed to him to encourage him to engage in the behavior with her. He also seeks to

allege that once in 2014 he received his paycheck and that the envelope was opened Rec. doc. 1,

P. 9. Williams alleges that he "sustained injures consisting of loss pay, both a past and future, pain

and suffering, difficulty, financial difficulties and mental anguish including distress." Williams

complains that he is over $100,000 in debt, suffered $81,370.00 and over $5000.00 in child support

because of Ennis's actions. Id.

Ennis filed the subject motion seeking dismissal of Williams' sexually hostile work

environment and retaliation claims because he cannot meet his burden of proof on either claim.

As a result, Ennis contends that summary dismissal of his entire claim is appropriate. Williams

has not filed an opposition to the matter.

**IV.      Standards of Review for Motion for Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A fact is "material" if resolving that fact in favor of one party could affect the

outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Poole v. City*

*of Shreveport*, 691 F.3d 624, 626-27 (5th Cir. 2012).

Where the moving party bears the burden of proof at trial, that party must support its motion

with "credible evidence . . . that would entitle it to directed verdict if not controverted at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986). In such a case the moving party must

"establish beyond peradventure all of the essential elements of the claim or defense to warrant

judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis

in original); *see also Access Mediquip, LLC v. United Healthcare Ins. Co.*, 662 F.3d 376, 378 (5th

Cir. 2011). Credible evidence may include depositions, documents, affidavits, stipulations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c). Moreover, in evaluating a motion for summary judgment by the party with the underlying burden of proof, the Court considers the substantive evidentiary burden of proof that would apply at the trial on the merits. *Anderson*, 477 U.S. at 252.

Once the moving party has made its showing, the burden shifts to the non-moving party to produce competent evidence that demonstrates the existence of a genuine issue of fact. *Engstrom v. First Nat. Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex*, 477 U.S. at 322-24). All justifiable inferences are to be drawn in the non-moving party's favor. *Anderson*, 477 U.S. at 255. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002)); *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003) ("Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for Summary Judgment."); *see also Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996) (stating that "mere conclusory allegations" are insufficient to defeat a motion for summary judgment).

A plaintiff's mere subjective beliefs fail to establish that a material fact issue is in dispute. *Chambers v. Sears Roebuck & Co.*, 428 F. App'x. 400, 419 n.54 (5th Cir. 2011); *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 383 (5th Cir. 2009); *Strong v. Univ. Health Care Sys., LLC*, 482 F.3d 802, 807 (5th Cir. 2007); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 654 (5th Cir. 2004). Though

the Court may not evaluate evidence on a motion for summary judgment, the Court may determine the "caliber or quantity" of evidence as part of its determination whether sufficient evidence exists for the fact-finder to find for the non-moving party. *Anderson*, 477 U.S. at 254.

Moreover, the summary judgment standard in an employment discrimination matter under Title VII and the ADA is premised upon a burden-shifting analysis from *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. Thereunder, the Court must first determine if the plaintiff has established a *prima facie* case of discrimination, sufficient to raise an inference of discrimination. *McDonnell-Douglas*, 411 U.S. at 802; *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-11 (2002) (finding that in Title VII actions, a *prima facie* standard is used for evidentiary purposes on summary judgment); *EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir.2009) (*McDonnell-Douglas* burden-shifting framework applies to ADA claims on summary judgment); *Powell v. Rockwell Int'l Corp.*, 788 F.2d 279, 285 (5th Cir. 1986) ("The *McDonnell-Douglas* formula . . . is applicable . . . in a . . . summary judgment situation.").

"Establishment of a *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Tex. Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 254 (1981); *see Turner v. Kansas City Southern Railway Co.*, 675 F.3d 887, 893 (5th Cir. 2012) (citing *Burdine*, 450 U.S. at 248). "The facts necessarily will vary in Title VII cases, and the specification above of the *prima facie* proof required from respondent is not necessarily applicable in every respect to different factual situations." *McDonnell-Douglas*, 411 U.S. at 802 n.13.

"There is no doubt that vague or conclusory allegations of discrimination or harassment are not enough to survive summary judgment." *Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir.

1998). "Moreover, the nonmoving party's burden is not affected by the type of case; summary judgment is appropriate in <u>any</u> case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quotation omitted) (emphasis in original); *accord Duron v. Albertson's LLC*, 560 F.3d 288, 291 (5th Cir. 2009).

## V.     Sexual Harrassment

Ennis contends that Williams sexually hostile work environment claim fails as a matter of law. Ennis contends that the alleged harassment was not based on Williams' sex, that the sexually explicit comments did not alter the conditions of Williams employment and that Williams retaliation claim fails as a matter of law. Finally, Ennis contends that it's legitimate non-retaliatory reason for terminating his employment cannot be rebutted and therefore his retaliation claim should be dismissed.

Sexual harassment is a form of sex discrimination. See *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64–65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). A plaintiff bringing a sexual harassment claim under Title VII must prove: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based upon sex; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action. See *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir.1998) (citing *Henson v. City of Dundee*, 682 F.2d 897, 903–05 (11th Cir.1982) (applying *676 these factors to a hostile work environment claim based on sexual harassment)).

An employer can be vicariously liable for a supervisor's harassment in two circumstances. The first situation, a quid pro quo case, exists when "a supervisor takes a tangible employment action based on, for example, a subordinate's refusal to accede to sexual demands." *Vance v. Ball State Univ*., ─── U.S. ────, 133 S.Ct. 2434, 2448, 186 L.Ed.2d 565 (2013). This results in strict liability for the employer. Id. The second situation, a hostile work environment case, exists when no such tangible employment action is taken. Id. There, an employer escapes vicarious liability if it can establish, as an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). This is known as the *Ellerth/Faragher* defense.

Sexual harassment, however, is not the only form of sex discrimination. Title VII of the Civil Rights Act prohibits discrimination on the basis of sex generally. 42 U.S.C. § 2000e et seq. To establish a prima facie case of discrimination, the plaintiff must show that his employer took adverse employment action motivated by his sex. See *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir.2007) (applying one version of this general test).3 "Adverse employment actions include discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir.2000).

A Title VII plaintiff carries the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act. *Teamsters v. United*

*States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). The central focus is always

whether the employer is treating "some people less favorably than others because of their ... sex."

Id. at 335, n. 15, 97 S.Ct. 1843. If the plaintiff makes this showing, the burden shifts to the

employer to articulate a legitimate, nondiscriminatory reason for its employment action. The

employer's burden is only one of production, not of persuasion, and it involves no credibility

assessment. If the employer meets this burden, the plaintiff must then prove that the employer's

proffered reason is not true but instead is a pretext for the real discriminatory purpose. *McCoy*, 492

F.3d at 557.

   A.  **Harassment not based upon sex**.

   Ennis contends that pretermitting the discussion regarding whether Bell was truly

Williams' supervisor as defined by Title VII, Williams cannot establish the third and fourth

elements i.e. that the statements were based on sex or affected a term or condition of his

employment.  Ennis contends that Williams own testimony establishes that the alleged harassment

was not based upon his sex but instead was vulgar and profane and made in the presence of both

male and females in the work place by Bell.

   The record establishes that Williams testified that Bell made sexually based inappropriate

comments in front of Anthony Gray, Stephanie Badeaux, Jennetta Bertrand and Charlene Seals.

Deposition of Jon Williams, Page 170 L 4-24.  However, just because words used in the work

place are of a sexual nature or contain sexual content, the usage of the words do not necessarily

constitute discrimination.  As in this case, where the inappropriate language was not directed to

Williams based upon his sex, male, but instead was said in front of females also, as a matter of law

does not render the workplace hostile.  *See also Adeshile v. Metro. Transit Authority of Harrish*

*County,* No. 06-3480, 2008 WL 112103, 2008 U.S. Dist. LEXIS 1663, at *17 (S.D. Tex. Jn. 9, 2008) (fact that harasser addressed her vulgar comments to both men and women also indicates that plaintiff was not exposed to offensive language to which members of the opposite sex were no similarly exposed such as to sustain a Title VII claim.") Having determined Bell indiscriminately was lewd, vulgar and profane, the Court does not reach the issue as to whether the language altered Williams conditions of employment.

### B. <u>Williams retaliation claim</u>.

Ennis contends that Williams retaliation claim fails. The retaliation that Williams complains of is that Bell complained about his tardiness because she was jealous he made more money. He also complains that he was terminated because Ennis feared that he would sue them. As a result, Ennis contends that Williams cannot rebut the non-retaliatory reasons for terminating him.

The record shows that Williams was chronically late to work and was counseled but failed to conform. Williams was aware that he had a work schedule to maintain but chose to set his own schedule and indicated he did not know he needed to do so at the time of hire. See Deposition of John Williams Rec. doc. 27-4, P 183, 25 of 45 l8-11.) See also Memo from Gayle Bell, dated December 6, 2016, ENNIS 000001, Williams timesheets dated 11/15/15, 11/27/16, 11/22/15, 12/04/16, 12/25/16 and 01/15/17, ENNIS 00002,00003, 000137, 000140.

In fact, Horn on November 17, 2016 gave Williams a written warning for not reporting to work on time after acknowledging his set work hours. See Horn Memo Rec. doc. 27-10, ENNIS000018, dated January 10, 2017, Exhibit G. In that same warning, Horn noted another instance when Williams was not at work in the middle of the day and indicated to a coworker that

10

he might not return.  Id.   Even after Williams was given the opportunity to set his own start time

for 8:00 a.m., he did not report to work on time.   See Second Warning regarding workplace

tardiness evidencing four additional tardy appearance of Williams.  Rec. doc. 27-15, P. 1.  While

Williams generally alleges that his termination was retaliatory, there is no evidence supporting the

allegation such that Summary Judgment is appropriate because Ennis presented an uncontradicted

legitimate nondiscriminatory reason for his termination.

  Accordingly,

## VI.    Conclusion

IT IS ORDERED that defendant Ennis, Inc's **Motion for Summary Judgment (Rec.
Doc. No. 27)** is **GRANTED**, and the plaintiff Jon Corey Williams claims of sexually hostile work
environment and retaliation are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this <u>19</u>th  day of June, 2019.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**